UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| CAT'S MEOW OF VEGAS, LLC, | Case No.: 2:20-cv-02055-APG-NJK |
| Plaintiff | **Order Denying Motion for Reconsideration** |
| v. | [ECF No. 32] |
| STATE OF NEVADA, et al., | |
| Defendants | |

Plaintiff Cat's Meow of Vegas, LLC moves for reconsideration of my prior order denying its motion for a temporary restraining order (TRO). ECF No. 32. Cat's Meow heavily relies on the recent decision of the Supreme Court of the United States in *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S.Ct. 63, No. 20A87, 2020 WL 6948354 (November 25, 2020), which enjoined the State of New York's COVID-19-based restrictions on attendance at religious services. The State of Nevada responds that *Diocese of Brooklyn* is "not about the vague category of protected expression [at issue in this case], it is about 'religious exercises'" and thus its "legal analysis cannot be imported into this freedom of expression case." ECF No. 37 at 5. I disagree somewhat with both sides: *Diocese of Brooklyn* does have some relevance here, but it does not dictate that I reconsider my prior order.[1]

The *per curiam* opinion in *Diocese of Brooklyn* analyzed the facts of that case under the *Winter* test for issuance of a TRO. 2020 WL 6948354 at *1-*3. I did the same thing during the TRO hearing in this case. ECF No. 36 at 42-44. To the extent that the rights of free exercise of

---

[1] It is worth noting that a majority of the justices found that the New York regulations at issue in *Diocese of Brooklyn* "are far more restrictive" than Nevada's regulations. 2020 WL 6948354 at *2 (citing to *Calvary Chapel Dayton Valley v Sisolak*, 591 U.S. ___ (2020)); *Id*. at *7 (Kavanaugh, J., concurring); *Id*. at *9 (Roberts, C.J., dissenting); *Id*. at *13 (Sotomayor, J., dissenting, joined by Kagan, J.).

religion (at issue in *Diocese of Brooklyn*) and free speech and freedom to assemble (both at issue here) all arise from the First Amendment, the analysis in *Diocese of Brooklyn* has some application here.

I am mindful of the legal principles raised in the various opinions of *Diocese of Brooklyn*. Cat's Meow points out "Justice Gorsuch's scathing review of" *Jacobson v. Massachusetts*, 197 U.S. 11, (1905). ECF No. 32 at 7. But Chief Justice Roberts states in his dissent that *Jacobson* still stands for the proposition that the "Constitution principally entrusts the safety and the health of the people to the politically accountable officials of the States to guard and protect." 2020 WL 6948354 at *9 (Roberts, C.J., dissenting) (internal quotation marks, revisions, and citations omitted). I agree with the Chief Justice that this proposition "should be uncontroversial." *Id.* Justice Kavanaugh aptly described the delicate balance that must be struck in this area:

> The Constitution principally entrusts the safety and the health of the people to the politically accountable officials of the States. . . . Federal courts therefore must afford substantial deference to state and local authorities about how best to balance competing policy considerations during the pandemic. . . . But judicial deference in an emergency or a crisis does not mean wholesale judicial abdication, especially when important questions of religious discrimination, racial discrimination, free speech, or the like are raised.

*Id*. at *8 (Kavanaugh, J., concurring) (internal quotation marks and citations omitted).

Contrary to Cat's Meow's implication, I have not given "extreme deference to elected officials." ECF No. 32 at 3. Nor am I "shelter[ing] in place while the Constitution is under attack." *Diocese of Brooklyn*, 2020 WL 6948354 at *6 (Gorsuch, J., concurring). On the other hand, merely invoking the Constitution, the First Amendment, and *Diocese of Brooklyn* does not dictate victory for Cat's Meow. Rather, I continue to tread cautiously in this legal minefield, applying appropriate constitutional principles to examine the arguments on both sides while mindful of the competing substantial public health and constitutional interests at stake.

I stated on the record at the TRO hearing my reasons for denying the motion for a TRO. ECF No. 36 at 42-44.  I also stated then, and affirm now, my belief that courts must not abdicate their responsibilities during a pandemic, and that governmental regulations on free speech and assembly must satisfy constitutional principles despite a national crisis. *Id*. at 41-42.  That is why I set an evidentiary hearing on Cat's Meow's motion for a preliminary injunction.  The defendants still must demonstrate, factually and legally, why the subject restrictions satisfy constitutional scrutiny.[2]  And Cat's Meow still has the burden of satisfying the requirements for issuance of an injunction.  The record developed at the time of the TRO hearing convinced me that the restrictions appear to be constitutionally sound and that Cat's Meow did not satisfy the *Winter* test for a TRO.  But Cat's Meow has not used up its nine lives.  As I said then, my analysis and weighing of the *Winter* factors may be different after the evidentiary hearing. *Id*. at 44-46.  *Diocese of Brooklyn* does not change that.

I THEREFORE deny the plaintiff's motion for reconsideration (ECF No. 32).

DATED this 30th day of December, 2020.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE

---

[2] Cat's Meow also argues in its reply that "the fact that the City of Las Vegas will permit the Freemont (sic) Street Experience canopy, under which Cat's is located, to open for New Year's Eve . . . significantly undercuts Defendants' contentions that the challenged Orders are narrowly tailored . . . ." ECF No. 39 at 3.  But Cat's Meow cites to last year's New Year's Eve celebration.  This year, "[d]ue to COVID restrictions mandated by the state, there will not be live entertainment or bands on Fremont Street Experience . . . . *See* https://vegasexperience.com/nye-faq/ (last visited 12/30/2020).  Moreover, given that the Fremont Street Experience is an outdoor venue (albeit under a canopy), there may be epidemiological reasons why a gathering there is less of a risk to spread COVID-19 than a gathering inside of Cat's Meow.  I hope the evidentiary hearing will flesh out this and similar issues.