AARON D. FORD
  Attorney General
Steve Shevorski (Bar No. 8256)
  Chief Litigation Counsel
Craig Newby (Bar No. 8591)
  Deputy Solicitor General
Kiel B. Ireland (Bar No. 15368C)
  Deputy Attorney General
Office of the Attorney General
555 E. Washington Ave, Ste. 3900
Las Vegas, NV 89101
(702) 486-3420 (phone)
(702) 486-3773 (fax)
sshevorski@ag.nv.gov
cnewby@ag.nv.gov
kireland@ag.nv.gov

*Attorneys for State Defendants*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| CAT'S MEOW OF LAS VEGAS, LLC d/b/a/ Cat's Meow, | Case No.  2:20-cv-02055-APG-NJK |
| Plaintiff, | |
| vs. | **STATE DEFENDANTS' POST-HEARING BRIEF** |
| THE STATE OF NEVADA, COVID-19 MITIGATION AND MANAGEMENT TASK FORCE; STEVE SISOLAK, in his official capacity as Governor of Nevada; AARON FORD, in his official capacity as Attorney General of Nevada; BARBARA CEGAVSKE, in her official capacity as the Nevada Secretary of State; CITY OF LAS VEGAS; CAROLYN GOODMAN, in her official capacity as Mayor of the City of Las Vegas; ROBERT SUMMERFIELD, in his official capacity as Director of the City of Las Vegas Department of Planning; and CALEB CAGE, in his official capacity as Chairman of the COVID-19 Mitigation and Management Task Force, | |
| Defendants. | |

Defendants "The State of Nevada, Covid-19 Mitigation and Management Task Force" (the "Task Force"); Steve Sisolak, in his official capacity as Governor of Nevada; Aaron Ford, in his official capacity as Attorney General of Nevada; Barbara Cegavske, in

her official capacity as the Nevada Secretary of State; and Caleb Cage, in his official capacity as Chairman of the Task Force (collectively the "State Defendants") hereby submit their post-hearing brief opposing Cat's Meow of Las Vegas, LLC's motion for preliminary injunction, following the January 11, 2020 evidentiary hearing.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Cat's Meow seeks injunctive relief against the Governor's guidance and emergency directives, seeking to reopen karaoke bars during a new spike in the COVID-19 pandemic.

As testified to earlier this month, the Governor considered federal public health guidance from the Centers for Disease Control ("CDC") and the White House Taskforce, how other States have addressed similar issues, and input from the State's public health team prior to making its decision not to yet reopen karaoke bars, which are a worst-case risk combination of singing, alcohol consumption, and intermingling throughout an enclosed space. Based on experience regulating mitigation efforts in other industries, the Governor concluded that it is more difficult to implement safety protocols where audience members are performing karaoke, rather than businesses who have hired performers or are managing health risks with their onsite employees. Performing audience members are not trained to understand buffer zones or other safety requirements associated with live entertainment. Even if they could be, it is much more difficult to comply with health and safety protocols in this social context, where alcohol consumption is often involved.

These concerns are not just hypothetical; they are reflected in the actual difficulties Cat's Meow had with safety protocol compliance as documented by the City of Las Vegas earlier this year.

Nothing from the evidentiary hearing should change this court's initial determination that Cat's Meow was not entitled to a temporary restraining order. ECF No. 36. The motion for preliminary injunction should be denied, allowing Nevada to continue its efforts to save Nevadan lives until or unless mass vaccination has arrived. . . .

1
2

## II.   CAT'S MEOW CANNOT MAKE A CLEAR SHOWING IT IS ENTITLED TO THE EXTRAORDINARY REMEDY OF A PRELIMINARY INJUNCTION

3
4
5
6
7
8
9
10

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). A court may grant such relief only upon the moving party's showing of (1) likelihood of success on the merits, (2) likelihood of irreparable harm in the absence of preliminary relief, (3) the balance of equities weighs in petitioner's favor, and (4) an injunction is in the public interest. *Id.* at 20. Where, as here, the party opposing injunctive relief is a governmental entity, the balance of equities and public interest factors merge. *See Nken v. Holder*, 556 U.S. 418, 435 (2009).

11

### A.   Cat's Meow Cannot Demonstrate Irreparable Harm

12
13
14

In its motion, Cat's Meow asserts two purported sources of irreparable harm: its alleged First Amendment injury and "financial damage." ECF No. 5, at 5-6. Neither one was established by Cat's Meow with evidence following the January 11 hearing.

15
16
17

First, Cat's Meow offered no evidence or testimony as to its alleged First Amendment injury. None. The State Defendants are unaware of any First Amendment "expressive conduct" of Cat's Meow that the current directives restrict.

18
19
20
21
22
23
24

Any purported harm to Cat's Meow's customers' First Amendment rights is irrelevant to the irreparable harm analysis. "The irreparable harm analysis focuses on the harm to the party seeking injunctive relief, not on potential harm to third parties." *Hernandez v. City of Phoenix*, 432 F. Supp. 3d 1049, 1068 (D. Ariz. 2020) (quoting *Wooten v. BNSF Ry. Co.*, No. 16-139, 2017 WL 1066630, at *2 (D. Mont. Mar. 16, 2017)). Even if the potential harm to customers were relevant, no testimony was offered by Cat's Meow's customers contending that their freedom of expression had been restricted. None.

25
26
27
28

Establishing irreparable harm in First Amendment cases is not automatic. *CTIA – The Wireless Ass'n v. City of Berkeley*, 928 F.3d 832, 851 (9th Cir. 2019), *cert. denied* 140 S.Ct. 658 (2019). Even where a movant shows that it is likely to prevail on a First Amendment claim, it must still make the separate showing that it will be irreparably

1  harmed without an injunction. *DISH Network Corp. v. FCC*, 653 F.3d 771, 776 (9th Cir.

2  2011). No such First Amendment harm (irreparable or otherwise) has been evidenced in

3  this case.

4         Second, Cat's Meow's proffered evidence as to its alleged financial damage lacked

5  foundation. Director Carlson did not know who even owned Cat's Meow. Director Carlson

6  did not himself prepare the spreadsheet associated with Cat's Meow's purported finances.

7  Director Carlson lacked knowledge as to whether Paycheck Protection Program funds for

8  Cat's Meow had been included within the balances of the spreadsheet. Of course, this

9  mistakenly presumes that financial damage is a permissible basis for finding irreparable

10  harm. *L.A. Mem'l Coliseum Comm'n v. NFL*, 634 F.2d 1197, 1202 (9th Cir. 1980).

11         Third, on the flip side, Director Carlson conceded that the financial harm would not

12  be redressed <u>even if</u> this court granted the preliminary injunction. Director Carlson

13  testified that Cat's Meow would not be profitable even if it were open now under current

14  25% occupancy limitations for bars, casinos, and other gatherings. In short, the proffered

15  injunction would not prevent the irreparable harm Cat's Meow contends exists.

16         Finally, no explanation, with or without evidence, has been provided to explain Cat's

17  Meow's delay in seeking injunctive relief. Citing *Oakland Tribune*, this Court has

18  recognized that "a movant's delay in requesting injunctive relief may rebut irreparable

19  harm." *ActionCOACH N.A., LLC v. Dunn*, No. 2:19-cv-02244-APG-DJA, 2020 WL 1066321,

20  *1 (D. Nev. 2020, Mar. 4, 2020). For months, following its July 2020 citations, Cat's Meow

21  has remained closed.  And at this point, a TRO would not "preserve the status quo," it would

22  alter it by forcing Cat's Meow to be allowed to open after being closed for almost six months.

23  *See id.* All during a new peak for COVID-19 cases within Nevada and the United States.

24         Under these circumstances, Cat's Meow cannot establish irreparable harm, which

25  constitutes an independent ground for denying the motion for preliminary injunction.

26     **B.    Cat's Meow is Unlikely to Succeed on the Merits of Its Claims**

27         From the record developed at the time of the temporary restraining order hearing,

28  this court was convinced that the emergency restrictions appeared to be constitutionally

sound. The evidentiary hearing provides further support for this court's initial conclusions that Cat's Meow is unlikely to succeed on the merits of its claims, as set forth below.

### 1. Deference is Provided for a State's Reopening of Certain Secular Activities before Others

As noted by this court in its order denying reconsideration:

> The Constitution principally entrusts the safety and the health of the people to the politically accountable officials of the States….Federal courts therefore must afford substantial deference to state and local authorities about how best to balance competing policy considerations during the pandemic….But judicial deference in an emergency or a crisis does not mean wholesale judicial abdication, especially when important questions of religious discrimination, racial discrimination, free speech, or the like are raised.

ECF No. 41, at 2 (quoting *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S.Ct. 63, 73-74 (U.S. 2020) (Kavanaugh, J., concurring)). Justice Kavanaugh issued similar guidance prior to the *Diocese of Brooklyn* opinion. For instance, in dissent, Justice Kavanaugh recognized "that courts should be very deferential to the States' line-drawing in opening businesses and allowing certain activities during the pandemic." *Calvary Chapel Dayton Valley v. Sisolak*, 140 S.Ct. 2603, 2614 (U.S. July 24, 2020) (Kavanaugh, J., dissenting).

Nevada's temporary restrictions, as set forth below, pass ordinary constitutional muster under existing First Amendment jurisprudence.[1] However, Nevada is entitled to deference on how best to balance competing policy considerations during the pandemic, particularly here where this court is not addressing an important question of religious discrimination, but rather a content-neutral restriction against karaoke and open microphone activities.

. . .

. . .

. . .

---

[1] The State Defendants will not reiterate their arguments against Cat's Meow's Equal Protection and Due Process claims, other than to state that there is no genuine dispute that Nevada's temporary restrictions comply with rational basis review, particularly because the temporary restrictions survive intermediate scrutiny.

**2.** **Cat's Meow's First Amendment Claim Lacks Merit**

      **a.** **The emergency orders are subject to only intermediate scrutiny because they are content neutral**

Cat's Meow is wrong that the challenged orders are content-based restrictions subject to strict scrutiny. As addressed in prior briefing, Cat's Meow simply ignores the definition of a content-based restriction on speech. "Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). Content-neutral restrictions, on the other hand, serve purposes "unrelated to the content of expression," even if the restriction "has an incidental effect on some speakers or messages but not others." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). Here, none of the challenged orders applies to karaoke *because of* the topic discussed or the idea or message expressed.[2] On this basis, this court should follow the lead of other courts, who have likewise concluded that COVID-19 restrictions on entertainment venues are content neutral. *See, e.g., Talleywhacker, Inc. v. Cooper*, 465 F. Supp. 3d 523 (E.D.N.C. 2020); *CH Royal Oak, LLC v. Whitmer*, 472 F. Supp. 3d 410, 416-17 (W.D. Mich. 2020); *Bimber's Delwood, Inc. v. James*, No. 20-CV-1043S, 2020 WL 6158612, at *12 (W.D.N.Y. Oct. 21, 2020); *McCarthy v. Cuomo*, No. 20-CV-2124 (ARR), 2020 WL 3286530, at *4 (E.D.N.Y. June 18, 2020).[3] This Court should do the same.

. . .

. . .

---

[2] Cat's Meow still has not clearly articulated what message it believes its karaoke expresses. Based on review of the Cat's Meow promotional video from its website, as conducted at the evidentiary hearing, it is still unclear whether or what message is expressed.

[3] Further, the State Defendants submit that there is no freedom of association implicated by the temporary restrictions, for the reasons set forth in its original opposition, specifically including the fact that the First Amendment does not recognize "a generalized right of 'social association' that includes chance encounters in dance halls." *City of Dallas v. Stanglin*, 490 U.S. 19, 25 (1989). Cat's Meow's customers are not "members of any organized association" and there is no evidence that they "take positions on public questions" or perform similar civic functions as part of their patronage of Cat's Meow. *See id*. The right of free association does not apply. *Id*.

1

2

> **b.    The emergency orders comply with intermediate scrutiny, as they are narrowly tailored to combat COVID-19 risk associated with karaoke**

Because the challenged orders are content neutral, they are subject only to intermediate scrutiny. *See Recycle for Change v. City of Oakland*, 856 F.3d 666, 674 (9th Cir. 2017). That means they are permissible if they: (1) "further[ ] an important or substantial government interest," (2) "the governmental interest is unrelated to the suppression of free expression" and (3) "the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." *Jacobs v. Clark Cty. Sch. Dist.*, 526 F.3d 419, 434 (9th Cir. 2008).

Here, there is no genuine dispute that combatting COVID-19 is an important government interest. *See, e.g.*, *McCarthy*, 2020 WL 3286530, at *4. And Cat's Meow cannot argue that the goal of combatting COVID-19 is related to suppression of free expression. In short, if Nevada can demonstrate that the temporary restrictions are narrowly tailored, such that the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest, Cat's Meow cannot demonstrate a likelihood of success on the merits.

> **i.    Narrowly tailored for intermediate scrutiny analysis requires consideration of whether the regulation helps to achieve the substantial government interest effectively**

At the close of the January 11 evidentiary hearing, the court requested that the parties address whether the efficacy of a State's enforcement efforts is a legitimate concern when addressing the temporary restrictions under First Amendment intermediate scrutiny. The State Defendants submit that it is a legitimate consideration, upon examination of how other federal courts have addressed intermediate scrutiny's "narrow tailoring."

First, for purposes of intermediate scrutiny, the regulation "'need not be the least restrictive or the least intrusive means' available to achieve the government's legitimate interests." *Berger v. City of Seattle,* 569 F.3d 1029, 1041 (9th Cir.2009) (en banc)

(quoting *Ward,* 491 U.S. at 798). "Rather, the requirement of narrow tailoring is satisfied so long as the regulation promotes a substantial government interest that would be achieved less effectively absent the regulation." *Colacurcio v. City of Kent,* 163 F.3d 545, 553 (9th Cir.1998) (internal quotation marks and ellipsis omitted).

Here, the court heard credible testimony from Caleb Cage, Nevada's lead COVID-19 pandemic administrator. Director Cage testified that addressing COVID-19 risks from karaoke would be achieved less effectively absent the temporary restrictions.

Second, while Cat's Meow may argue that the temporary restrictions burden more speech than is necessary to satisfy the governmental interest, courts under intermediate scrutiny "may not invalidate such a regulation 'simply because there is some imaginable alternative that might be less burdensome on speech.'" *Vivid Entm't, LLC v. Fielding*, 774 F.3d 566, 580–81 (9th Cir. 2014) (quoting *United States v. Albertini,* 472 U.S. 675, 689, 105 S.Ct. 2897, 86 L.Ed.2d 536 (1985)). Stated differently, it "is well established that a law need not deal perfectly and fully with an identified problem to survive intermediate scrutiny." *Contest Promotions, LLC v. City & Cty. of San Francisco*, 874 F.3d 597, 604 (9th Cir. 2017).

Respectfully, Cat's Meow's questioning of Director Cage suggests hypothetical policies that, on paper, may mitigate COVID-19 risk, such as the creation of a plexiglass cage for karaoke performers and heightened sanitation protocols. However, absent effective enforcement, Cat's Meow's proposed policies are simply "some imaginable alternative that might be less burdensome on speech."[4] Nevada does not have to create policies that meet Cat's Meow's "imaginable alternative" to survive intermediate scrutiny. Director Cage provided credible testimony on why policies on paper, absent effective enforcement, will not achieve Nevada's goal of mitigating COVID-19 risk.

---

[4] The City of Las Vegas enforcement log for Cat's Meow demonstrates the difficulties of enforcement of a hypothetical policy, where Cat's Meow could not or would not follow direction from the City of Las Vegas on safety requirements. *Cf. Medina v. Sessions*, 279 F. Supp. 3d 281, 293 (D.D.C. 2017), *aff'd sub nom. Medina v. Whitaker*, 913 F.3d 152 (D.C. Cir. 2019), *cert. denied sub nom. Medina v. Barr*, 140 S. Ct. 645 (2019) (explaining that "it is relevant for purposes of intermediate scrutiny that Congress has tried to apply a more narrowly-tailored regime and found it both insufficient to remedy the harm and impossible to administer").

The *Vivid Entertainment* case is instructive for considering the role of effective regulations within the analysis of intermediate scrutiny. There, the Ninth Circuit upheld the district court's denial of injunctive relief sought for adult film makers on First Amendment grounds against a mandate that all such workers use condoms when filming their work. *Vivid Entm't, LLC v. Fielding*, 774 F.3d 566, 582 (9th Cir. 2014). Plaintiffs argued that existing testing and monitoring protocols already addressed the compelling interest of slowing the spread of sexually transmitted diseases. *Id.* at 581.

The Ninth Circuit rejected plaintiffs' argument, noting that it "overstates the standard for narrow tailoring, which simply requires that the regulation 'promote[ ] a substantial government interest that would be achieved less effectively absent the regulation.'" *Id.* at 582 (quoting *Colacurcio,* 163 F.3d at 553). The Ninth Circuit held that the "regulation need not be the *most* effective way to achieve the government's substantial interest, nor must it be shown that the regulation cannot be circumvented." *Id.* (emphasis in original). Instead, "it suffices if the regulation helps to achieve the substantial government interest effectively." *Id.* (quoting *Colacurcio*, 163 F.3d at 553).

Unlike that case, where the "erotic message of the films" was identified as "expressive conduct", no such conduct by Cat's Meow has been argued or evidenced. *Vivid Entm't, LLC*, 774 F.3d at 579. Further, the existing testing and monitoring protocols for adult film performers are the "imaginable alternative" to the condom mandate, akin to Cat's Meow's "imaginable alternative" of more plexiglass and precautions short of a karaoke ban.

Just as the Ninth Circuit rejected the "imaginable alternative" to the condom mandate, based on evidence that the testing scheme was ineffective (*id.* at 581), this court should reject Cat's Meow's "imaginable alternative" to the temporary restriction, based on evidence provided by Director Cage pertaining to the ineffectiveness of such mitigation efforts absent effective enforcement.

Under the circumstances testified to at the January 11 evidentiary hearing, the State Defendants submit they have met their burden of intermediate scrutiny, to the extent

it applies to Cat's Meow's business closure. Cat's Meow is unlikely to succeed on the merits of its claims, making it unentitled to injunctive relief.

## C.    The Relative Hardships and the Public Interest Favor Defendants

Cat's Meow seeks to restrict the Governor's statutory and constitutional discretion to act on an emergency basis to protect Nevadan lives and its visitation-based economy. Cat's Meow glosses over the COVID-19 pandemic in its analysis, ignoring that the pandemic is once again approaching a new peak. Director Cage provided significant testimony as to the indisputable health impacts of COVID-19 within Nevada, including more than 400,000 Americans (and more than 3,900 Nevadans) dead so far.

Cat's Meow has made no effort to weigh or balance Nevada's interest in slowing deaths and related harms associated with COVID-19, which is necessary for Nevada's economy to return to normal. The phased reopening of gatherings is a lesser hardship than further allowing the COVID-19 virus to spread throughout Nevada, killing Nevadans and threatening to destroy Nevada's full economy. These are not easy decisions for the Governor to make, but during public health crises, "it is no part of the function of a court … to determine which of two modes was likely to be the most effective for the protection of the public against disease." *Jacobson v. Mass.*, 197 U.S. 11, 30 (1905).

Cat's Meow does not get to substitute its judgment of the public interest for those representing us in the local, State, and federal government.  This prong strongly warrants denial of the motion, even if this court were uncertain as to the likelihood Cat's Meow would succeed on the merits of its claims. The policies react to a "dynamic" situation "fraught with medical and scientific uncertainties."  *S. Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613 (2020) (Roberts, C.J., concurring in denial of application for injunctive relief). This Court should decline Cat's Meow's invitation to "second-guess[ ]" those policies based on nothing more than theories of what would and would not be safe.  *See id.*

This prong strongly supports denial of the motion for preliminary injunction.

. . .

. . .

III.   **CONCLUSION**

For these reasons, this Court should deny Cats' Meow's motion for preliminary injunction.

DATED this 25th day of January, 2021.

AARON D. FORD
Attorney General

By: */s/ Craig Newby*
   Steve Shevorski (Bar No. 8256)
   Chief Litigation Counsel
   Craig Newby (Bar No. 8591)
   Deputy Solicitor General
   Kiel B. Ireland (Bar No. 15368C)
   Deputy Attorney General

*Attorneys for State Defendants*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I certify that I am an employee of the State of Nevada, Office of the Attorney General, and that on this 25th day of January, 2021, I electronically filed the foregoing document, **STATE DEFENDANTS' POST-HEARING BRIEF,** with the Clerk of the Court by using the CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

/s/ *Kristalei Wolfe*
Kristalei M. Wolfe, an employee of the
Office of the Nevada Attorney General