UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| CAT'S MEOW OF VEGAS, LLC, | Case No.: 2:20-cv-02055-APG-NJK |
|---|---|
| Plaintiff | **Order Denying Motion for Preliminary Injunction** |
| v. | [ECF No. 5] |
| STATE OF NEVADA, et al., | |
| Defendants | |

Plaintiff Cat's Meow of Vegas, LLC (Cat's) operates a karaoke venue. It sues defendant State of Nevada and several state and local officials, challenging as unconstitutional some of the regulations that defendant Governor Steve Sisolak issued in response to the Covid-19 pandemic. Cat's asserts that these restrictions have prevented it from operating and have thus violated the First Amendment.

Cat's moves for an order enjoining the defendants from enforcing certain pandemic-related restrictions. I deny the motion because Cat's has not satisfied the factors required for injunctive relief.

**I. BACKGROUND**

Cat's operates a full-service bar that provides live karaoke production entertainment. Employing disc jockeys and emcees, Cat's "strives to create a high energy and non-stop karaoke environment for its patrons." ECF No. 1 at 12. After first closing in March 2020 due to the pandemic and then reopening as a tavern in May 2020, Cat's has been closed for business since July 2020. ECF 1 at 13.

As relevant here, Cat's challenges two restrictions imposed by the State of Nevada. The first restriction is the requirement of a 25-foot buffer between the audience and performers in

Declaration of Emergency Directive 033 (the buffer order). ECF No. 1-12 at 5.  The second restriction is the prohibition of karaoke singing in the Nevada Guidance for Safe Gatherings (the karaoke order), which accompanies Directive 033. ECF No. 1-13 at 20.  Cat's argues that these regulations amount to a ban of its customers' and employees' expression.

**II. ANALYSIS**

To qualify for a preliminary injunction, a plaintiff must demonstrate: (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm, (3) the balance of hardships favors the plaintiff, and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  Alternatively, under the sliding scale approach, the plaintiff must demonstrate (1) serious questions on the merits, (2) a likelihood of irreparable harm, (3) the balance of hardships tips sharply in the plaintiff's favor, and (4) an injunction is in the public interest. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

    **A. 25-Foot Buffer**

Cat's asserts that the buffer order is facially content-based because "it distinguishes between live performances based on whether they are subject to the" live entertainment tax described in Nevada Revised Statutes (NRS) Chapter 368A. ECF No. 5 at 17.  Cat's argues that the buffer order and related guidance impermissibly distinguish live entertainment between karaoke and ambient music by exempting ambient music from the 25-foot buffer. ECF No. 1-13 at 19-20.

    *1. Whether the order is content-based*

"A regulation is content based if, 'on its face,' it 'draws distinctions based on the message a speaker conveys.'" *Lone Star Sec. & Video, Inc. v. City of Los Angeles*, 827 F.3d 1192, 1198 (9th Cir. 2016) (quoting *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015)).  If the

regulation is content neutral on its face, courts determine "whether it is nevertheless a content-based regulation of speech because it cannot be justified without reference to the content of the regulated speech, or [was] adopted by the government because of disagreement with the message [the speech] conveys." *In re Nat'l Sec. Letter*, 863 F.3d 1110, 1123 (9th Cir. 2017) (quotation omitted); *see also Ward v. Rock Against Racism*, 491 U.S. 781, 792–93 (1989) (holding that a city ordinance on sound quality of amplified performances was not for aesthetic goals but for the content-neutral goals of "ensuring adequate sound amplification").

The buffer order is content-neutral. On its face, Directive 033 does not draw distinctions based on the message a speaker conveys. It is based on the manner and context in which live music is presented to an audience. Even if the regulation were not facially content-neutral, there is no apparent preference by the State of Nevada for a certain message. Cat's argues that the government appears to prefer ambient jazz music because the 25-foot buffer does not apply to ambient music. But that distinction is not relevant to an actual message of the speaker.[1] The 25-foot buffer applies to live entertainment performances regardless of their message.

      2. *Intermediate scrutiny*

Intermediate scrutiny applies to content-neutral restrictions on speech. *Pac. Coast Horseshoeing Sch., Inc. v. Kirchmeyer*, 961 F.3d 1062, 1068 (9th Cir. 2020). A content-neutral regulation of speech must be "narrowly tailored to serve a significant governmental interest." *McCullen v. Coakley*, 573 U.S. 464, 486 (2014) (quotation omitted). "[T]o be narrowly tailored, [the regulation] must not burden substantially more speech than is necessary to further the government's legitimate interests." *Id.* (quotation omitted). The regulation "need not be the least

---

[1] And the buffer order does not specifically single out jazz, soft rock, classical, or any other genre of ambient music.

restrictive or least intrusive means of serving the government's interests," but "the government still may not regulate expression in such a manner that a substantial portion of the burden on speech does not serve to advance its goals." *Id.* (quotation omitted).

The defendants have demonstrated that the 25-foot buffer serves the purpose of preventing Covid-19 transmission by socially distancing an audience from performers. The government has a significant interest in preventing the spread of Covid-19, which "spreads extremely efficiently" and "by 2020 . . . was the number one cause of death in the state of Nevada." ECF No. 43 at 79. Defendant Caleb Cage, the director of Nevada's Covid-19 response team, testified that an audience "may be more at risk of catching the virus because of the loud speaking or singing coming from a speaker, entertainer, [or] host-type person." *Id.* at 89. He explained that Covid-19 spreads through the transmission of droplets in the air that people exhale. *Id.* at 66-67. When people speak or sing loudly, they send more particles in the air or send them farther. *Id.* at 70, 89, 121. According to Cage, Directive 033 distinguishes between ambient music and live entertainment because ambient music is unobtrusive background music and does not involve an audience directly facing a stage. *Id.* at 120-21. Cat's argues that a plexiglass barrier is an acceptable alternative to 25 feet of distance, but Cage testified that with a barrier in place, viral particles will be "in the air for some time," "would still be potentially spreading around the room," and would be present on the barrier itself. *Id.* at 136. He further explained that a barrier by itself may not sufficiently mitigate the risk of transmission because "air flows around and over" it. *Id.* at 133. The buffer order is thus narrowly tailored because it does not burden substantially more speech than necessary to further the government's interest in preventing Covid-19 from spreading.

/ / / /

### 3. Conclusion

Cat's has not established a likelihood of success on the merits on its claim challenging the buffer order. Moreover, Cat's is not entitled to injunctive relief based on the other *Winter* factors. As I stated at the November 17, 2020 hearing, in balancing the hardships, the protection of the public's health at least ties if not exceeds Cat's right to operate a karaoke bar. *See* ECF No. 36 at 44. Thousands of Nevadans are at risk of serious injury or death due to Covid-19, and that outweighs the hardship to Cat's, especially where Cat's ultimately might be entitled to monetary damages for lost profits at the end of the case. *Id.* I therefore deny the motion for an injunction on this claim.

**B. Karaoke Order**

Cat's argues that a complete ban on karaoke violates the First Amendment because it is not narrowly tailored. But because I have concluded that Cat's is unlikely to succeed on the merits of its challenge to the 25-foot buffer order, its standing to request temporary injunctive relief from the karaoke order is questionable. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) ("[I]t must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.") (internal quotations omitted); *see also Hollingsworth v. Perry*, 570 U.S. 693, 708 (2013) ("[E]ven when we have allowed litigants to assert the interests of others, the litigants themselves still must have suffered an injury in fact. . . .") (quotation omitted); *Get Outdoors II, LLC v. City of San Diego, Cal.*, 506 F.3d 886, 891 (9th Cir. 2007) ("Even when raising an overbreadth claim, however, we ask whether the plaintiff has suffered an injury in fact. . . .") (citations omitted). Cat's Director of Operations, Ryan Carlson, stated in his declaration that "[a]s currently configured, Cat's cannot operate with a 25-foot buffer and the six-foot social distancing requirements," because "there is not enough room for the stage, a 25-foot radius, and

tables/chairs spaced in the remaining area six-feet apart while also providing a six-foot socially distanced space/walkway" in other areas of the space. ECF No. 5-2 at 3. And at the evidentiary hearing, the proposed floorplan that Carlson discussed was the floorplan used in June 2020, prior to the issuance of the buffer order. ECF No. 43 at 14. Carlson never testified that the proposed floorplan allows for 25 feet of separation from the stage to the nearest patron table. Given that I will not enjoin enforcement of the buffer order, Cat's would be unable to operate even if I enjoined enforcement of the karaoke order. Thus, the requested temporary injunctive relief as to the karaoke ban would not redress Cat's injury.

      Even if Cat's has standing to request temporary injunctive relief from the karaoke order, it is not entitled to injunctive relief on this claim. Cat's poses a close question as to whether it is likely to succeed on the merits. But based on the other factors it must satisfy to obtain injunctive relief, I do not grant that relief.

      Cat's has not shown a likelihood that it will suffer irreparable harm absent an injunction barring enforcement of the karaoke order  Cat's also has not shown that the balance of hardships tips in its favor or that it serves the public interest to enjoin the defendants from enforcing the karaoke order. The "pandemic remains extraordinarily serious and deadly." *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 73 (2020) (Kavanaugh, J., concurring); *see also* ECF No. 43 at 79 (Cage testifying that as of the date of the January 21, 2021 hearing, more than 2,000 Nevadans and approximately 300,000 Americans had died from Covid-19). Courts "are not public health experts, and we should respect the judgment of those with special expertise and responsibility in this area." *Roman Catholic Diocese*, 141 S. Ct. at 68. At the same time, "judicial deference in an emergency or a crisis does not mean wholesale judicial abdication." *Roman Catholic Diocese*, 141 S. Ct. at 74 (Kavanaugh, J., concurring). I am mindful of that

principle, and I am not abdicating my judicial role of ensuring that the government does not violate the Constitution. But based on the evidence and arguments presented in connection with Cat's' injunction motion, I deny the relief Cat's requests because Cat's has not satisfied the *Winter* test for a preliminary injunction.

### III. CONCLUSION

I THEREFORE deny plaintiff Cat's Meow's motion for a preliminary injunction.

DATED this 11th day of February, 2021.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE